# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| SHAWN HORNBECK, MONTE BURGESS, DAN CHEVALIER & RUSS MAPES, | ) ) ) | |
| each on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:18-cv-00523 |
| TRACTOR SUPPLY COMPANY, | ) ) | |
| and | ) ) | |
| SMITTY'S SUPPLY, INC., | ) ) | |
| Defendants. | ) | |

## REVISED FIRST AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs, on behalf of themselves and all others similarly situated, and for their causes of action state and allege as follows:

## INTRODUCTION

1.      For years, Defendants, as well as other lubricant manufacturers and sellers, have deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303" designation is obsolete and 303 specifications have not been available for over forty (40) years. These manufacturers and sellers have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they were selling did not

1

meet all listed manufacturer specifications and did not contain the anti-wear and protective properties required in Tractor Hydraulic Fluid.

2.      Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years.  It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment.  In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and effective THF product.

3.      Sperm whale oil was an essential ingredient in Deere's 303 THF.  In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil.   Deere was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable.   Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient—sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids.

4.      After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including J14B, J20A and J20B.  Many other manufacturers created and sold fluids that purported to be similar.  The J14B specification became obsolete in the late 1970s.  During the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace.  The Quatrol program required blenders and sellers of competing THF products to submit test data to Deere prior to the use of the J20A specification on their product labels, to ensure the products met the advertised specifications.

5.  In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. Today, John Deere manufactures and sells THF meeting a specification called J20C or J20D (low viscosity). The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products meeting the J20C specification in order to compete with John Deere. The following timeline illustrates the history of 303 THF:



**TRACTOR HYDRAULIC FLUID (THF) TIMELINE**

JOHN DEERE THF SPECIFICATIONS

| 1960 | 1974 | 1978 | 1989 | 2017 |

| J303[1] | J14B | J20A[2] | J20C[2] |
| | | J20B[3] | J20D[3] |

■ Discontinued
■ Current

Footnotes:
1. There are no specifications available for 303 Tractor Hydraulic Fluids, and, as such, products making only "303" claims cannot be tested to assure compliance with any known specifications.
2. Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Summer or warm weather climates).
3. Low Viscosity Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Winter or cold weather climates).

| John Deere Specification | Comment | JD Issue Date |
|---|---|---|
| JDM J20D[3] | THF for cold climates | 1989 - Current |
| JDM J20C[2] | Primary THF specification | 1989 - Current |
| JDM J20B[3] | DISCONTINUED – replaced by JDM J20D | 1978 - 1989 |
| JDM J20A[2] | DISCONTINUED – replaced by JDM J20C | 1978 - 1989 |
| JDM J14B | DISCONTINUED – replaced by JDM J20A/B | 1974 - 1978 |
| JDM J303[1] | DISCONTINUED – replaced by JDM J14B | 1960 - 1974 |

6.  John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products on the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

7.  Manufacturers and sellers of THF deceptively and illegally trade on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry. Because there is

no known "303" specification, there is no way for manufacturers, sellers, or anyone else to truthfully claim the products meets or is in compliance with any such specification.

8.    Nonetheless, manufacturers and sellers promote these 303 THF products as a lower cost alternative, and offer them for sale as economically priced tractor hydraulic fluids that meet many (or in some cases all) manufacturers specifications, have effective lubricant and anti-wear additives and properties, and are safe for use in purchasers' equipment. The THF fluids are often sold with eye-catching photos of modern tractors and industrial equipment and are sold in bright, yellow 5-gallon buckets. By name dropping a list of equipment manufacturers, Defendants and other sellers seek to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications. Defendants' Super S Super Trac 303 Tractor Hydraulic Fluid is one such product.

9.    In addition to deceptively promoting a designation that is obsolete, manufacturers use poor quality base oils, waste oil, line flush, used motor oil and diluted additive packages in their 303 THF products in order to keep production costs down and increase profits. As a result of the inferior ingredients and this "down-treating" of addictive packages, the 303 THF fluids not only lack the required lubricant and protective benefits offered to purchasers, when they are used the fluids actually cause purchasers' equipment to suffer increased wear and damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective additives, the 303 THF is labeled and marketed to unsuspecting purchasers as meeting manufacturer specifications and providing certain benefits and anti-wear properties.

10.    In November 2017, because of the deceptive nature of the 303 THF products, the failures of the products to meet any published specification, and the damage the products could

cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants and all other manufacturers and sellers from offering "303" THF products for sale in Missouri.

11.     Prior to the State of Missouri's ban, for years, Defendants' conduct harmed consumers like Plaintiffs, who purchased "303" tractor hydraulic fluid products, more specifically Super S Super Trac 303 Tractor Hydraulic Fluid (303 THF Product), that were offered and sold as an acceptable tractor hydraulic fluids that meet certain manufacturer specifications and as fluids that are safe for use in farm, construction and logging equipment and have certain characteristics and qualities that protect equipment from wear and damage.

12.     In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met manufacturers' specifications, Plaintiffs and other purchasers received a 303 THF Product that, contrary to Defendants' labeling, had no known specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications and therefore caused consumers' equipment  damage and harm, increased wear , and caused consumers to overpay for a product that was worthless and/or worth much less than the sale price.  Like many other consumers throughout the State of Missouri, Plaintiffs Shawn Hornbeck, Monte Burgess, Dan Chevalier and Russ Mapes each purchased Defendants' 303 THF Product, and suffered damage as a result.

## PARTIES

13.     Plaintiff Shawn Hornbeck is a citizen and resident of Peculiar, Missouri.

14.     Plaintiff Monte Burgess is a citizen and resident of Belton, Missouri.

15.     Plaintiff Dan Chevalier is a citizen and resident of Belton, Missouri.

16.     Plaintiff Russ Mapes is a citizen and resident of Deepwater, Missouri.

17.     Defendant Tractor Supply Company (Tractor Supply) is a for-profit company authorized to do business in the State of Missouri with its principal place of business in Brentwood, Tennessee.

18.     Defendant Tractor Supply has advertised and sold its products in Cass County, Henry County, and throughout the State of Missouri at its Tractor Supply Co. retail stores.

19.     Defendant Smitty's Supply, Inc. (Smitty's) is a for-profit company authorized to do business in the State of Missouri with its principal place of business in Roseland, Louisiana. Defendant Smitty's has advertised and sold its products, including its Super S Super Trac 303 Tractor Hydraulic Fluid, in Cass County, Henry County, and throughout the State of Missouri, including at Tractor Supply, and other retail stores.

## JURISDICTION AND VENUE

20.     This action was originally filed in Cass County Circuit Court, State of Missouri, which was an appropriate venue because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment, occurred in Cass County and elsewhere in the State of Missouri.

21.     The Circuit Court of Cass County, Missouri had personal jurisdiction over Defendants because Defendants transact business in Missouri, with their various advertising methods and product sales directed toward Missouri residents.  Additionally, original Plaintiffs Hornbeck and Burgess purchased the products at issue in Cass County, Missouri.

22.     This is a civil case in which the Cass County Circuit Court, State of Missouri, had jurisdiction pursuant to Mo. Const., Art. V. § 14.

23.     Defendants removed this action to Federal Court.   Jurisdiction and venue is appropriate in the United States District Court for the Western District of Missouri.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

24.      Defendant Tractor Supply is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores within Cass County, Henry County and other Counties throughout the State of Missouri.

25.     Defendant Tractor Supply has advertised and sold the Super S Super Trac 303 Tractor Hydraulic Fluid product to consumers in Cass County, Henry County, and throughout the State of Missouri.

26.     Defendant Smitty's is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within Cass County, Henry County and other Counties throughout the State of Missouri.

27.     During some or all of the time period from 2013 to the present, Defendant Tractor Supply sold and advertised in yellow buckets a 303 THF Product called Super S Super Trac 303 Tractor Hydraulic Fluid.

28.      During some or all of the time period from 2013 to the present, Defendant Smitty's manufactured and advertised the Super S Super Trac 303 Tractor Hydraulic Fluid sold by Tractor Supply and other retailers.

## Defendants' Deceptive Labeling, Marketing and Advertising

29.      During some or all of the time period from 2013 to the present, Defendants offered the 303 THF Product for sale as an acceptable tractor hydraulic fluid meeting a wide number of manufacturers' specifications at stores all over Missouri.   The average sale price for a five (5)

gallon bucket of Defendants' 303 THF Product was $25.00, but the price varied somewhat by location and was offered at a discounted price periodically during promotions.

30.      Defendants falsely and deceptively labeled, marketed and offered for sale the Super S Super Trac 303 Tractor Hydraulic Fluid (1) as meeting manufacturer specifications and being acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) as a substitute for and satisfying John Deere's JD-303 specifications ; (3) as a fluid that provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) as a fluid that protects against rust and corrosion; and (5) as a fluid designed for use in equipment manufactured by Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar.

31.      Defendants' labeling, marketing, advertising and sale of the 303 THF Product has been widespread, continuous and contained on various signs, labels and advertisements throughout the State of Missouri for years.  Representative examples of Defendants' labeling, marketing and advertising materials are set forth below.

32.      Super S Super Trac 303 Tractor Hydraulic Fluid was specifically labeled, marketed and advertised as follows:



## Super S® SuperTrac® 303 Tractor Hydraulic Fluid
**TECHNICAL PRODUCT INFORMATION**

### Super S SuperTrac 303 Tractor Hydraulic Fluid
**Super S SuperTrac 303 Tractor Hydraulic Fluid** is designed to lubricate the transmission, differential and final drive gears in tractors and implements. It is a multi-functional fluid used as a hydraulic medium, and as a power steering, power brake, power take-off (PTO), and implement drive fluid.

### FEATURES/ BENEFITS
- Lubricates the transmission, differential and final drive gears in tractors and implements
- Provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pump
- Protects against rust and corrosion
- Provides excellent results for foam suppression and water sensitivity
- Controlled frictional characteristics permit the wet brakes to hold properly, reduces brake chatter and provides for smooth engagement of power take-off (PTO) clutches.

### APPLICATIONS
**SuperTrac 303 Tractor Hydraulic Fluid** is designed for use as a replacement fluid for the hydraulic, wet brake, and transmission requirements of equipment manufacturers where a product of this quality is recommended, including:

| | | |
|---|---|---|
| Allis Chalmers | Allison | Caterpillar |
| Deutz | Ford Tractor | International Harvester |
| J I Case/David Brown | John Deere 303, J20A | Kubota |
| Massey Ferguson | Oliver | White |

33. The Super S Super Trac buckets contain the following, similar information:



34. These representations were also contained in Defendants' advertising circulars and/or on Defendants' websites.

35.     Defendants' labeling specifically represented that the 303 THF Product being sold was acceptable for use and was:

- Field Tested

- Suitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality if recommended:  Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303, Kubota, Massey Ferguson, Oliver, White

- Will provide excellent results in the areas of:
  1. Anti-wear properties
  2. Brake Chatter
  3. Extreme Pressure Properties
  4. Foam Suppression
  5. PTO Clutch Performance
  6. Rust Protection
  7. Water Sensitivity

36.     By naming, labeling, marketing, advertising and selling the 303 THF Product in the foregoing manner, and by describing the product using words such as "303" and "multi-functional," Defendants sought to create, and did create, an image of the 303 THF Product in the minds of Plaintiffs and other consumers that would lead a reasonable consumer to conclude that Defendants' 303 THF Product was completely safe and effective for use in consumers' equipment and all equipment made by the listed manufacturers.

37.     Defendants' product name, labeling, advertising and marketing of their 303 THF Product was material to the reasonable consumer.

38.     At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the representations regarding 303 THF Product were false, deceptive and misleading to consumers seeking to purchase tractor hydraulic fluid.

39.     The John Deere "303" designation is over 50 years old and has been obsolete for many years.  Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil—have been banned since the 1970s and are no longer available for use.  As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no known specifications for 303 fluid.   Defendants knew or should have known that at the time they were marketing and selling the 303 THF Product during the Class Period, there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the 303 THF Product met "303" specifications could not possibly be true, and Defendants had no way to ensure the accuracy of representations that their 303 THF Product was in compliance with any known specifications.

40.     As Defendants knew, or should have known, the 303 THF Product manufactured by Defendants and sold in the yellow buckets lacked some or all of the additives required to provide the advertised "results," "features" and "benefits."

41.     As Defendants knew, or should have known, the 303 THF Product manufactured by Defendants and sold in the yellow buckets was made using flush oil, line wash or other waste oil products containing motor oil components and other additives that are never appropriate for use in a tractor hydraulic fluid.

42.     As Defendants knew, or should have known, the 303 THF Product manufactured by Defendants and sold in the yellow buckets did not meet all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment.  Alternatively, Defendants knew, or should have known, they had no basis on which to sell the 303 THF Product as a tractor hydraulic fluid that met the specifications of all manufacturers listed on the label because, on information and belief, either 1) Defendants' test data showed the viscosity, pour point and additive levels of the 303 THF fluids varied, was

inconsistent, and did not meet some or all of the specifications of the manufacturers listed on the labels; or 2) Defendants did not have any test data to confirm the 303 THF Product always had the viscosity, pour point or additive levels that met all manufacturers' specifications or that were needed for a fluid suitable for use in consumers' equipment.

43.     At no point in time, on the label of the 303 THF product or otherwise, did Defendants tell purchasers the truth, including that:

a.  The "303" designation is obsolete, an essential ingredient in the formula was banned in the 1970s, and there is no known 303 specification against which to test the fluids offered for sale;

b.  Defendants used low quality base oil, flush oil, line wash, or reclaimed motor oil in the 303 THF Product, all of which are unfit for use in hydraulic systems and should never be contained in a tractor hydraulic fluid;

c.  The 303 THF Product contained a "down-treated" additive package;

d.  Defendants' test data did not confirm all of the 303 THF Product met all manufacturers' specifications;

e.  Defendants have no idea whether all of the 303 THF Product they offered for sale met the requirements of, has acceptable anti-wear properties, or is suitable for use in tractors or other equipment; and

f.  Use of the 303 THF Product would cause damage to purchasers' equipment, such as damage to the spiral gear in the drive, excessive wear, seal leakage, high pump leakage, and damage from deposits, sludging and thickening.

44.     Instead, the 303 THF Product was deceptively offered for sale as a fluid containing quality base oils, sufficient additives, and meeting the obsolete and unavailable "303" specification.

### The State of Missouri's Testing of 303 THF

45.     Because of the poor, uncertain quality of 303 tractor hydraulic fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the damage the fluids can do to tractors and other equipment. The Missouri Department of Agriculture (MDA) is one such entity.

46.     In the summer of 2017, the MDA sampled fourteen (14) different 303 THF products, many of which claimed to meet manufacturers' specifications and claimed to work in almost every tractor. Defendants' 303 THF Product was purchased in Missouri by the MDA in 2017 and was one of the products tested.

47.     The MDA tested the fluids' viscosity, pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

48.     As a result of the testing, the MDA concluded that all fourteen (14) of these 303 THF products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

49.     Defendants' 303 THF Product was one of the fluids that failed to meet current specifications. More specifically, Defendants' 303 THF Product had a viscosity (Kinematic Viscosity @ 100C) level of 7.647. The J20C specification for KV@100C requires a minimum of 9.1 and therefore Defendants' 303 THF Product fell short of the standard. Defendants' 303 THF

Product had a pour point of -42C.  The J20D specification for pour point requires of -45C, and therefore Defendants' 303 THF Product fell short of the standard:

| Sample ID | Property | Units | Test Result | J20C, Min |
|-----------|----------|-------|-------------|-----------|
| 8208/5 | Kinematic Viscosity @100°C | cSt | 7.647 | 9.1 |
| Sample ID | Property | Units | Test Result | J20D, Max |
| 8208/5 | Pour Point | °C | -42 | -45 |

50.     Defendants 303 THF product was also found to have additive levels of calcium, phosphorous and zinc that were well below (50% or more less than) the additive levels found in fluids meeting the J20C specification.

51.     Furthermore, Defendants' 303 THF product's Kinematic Viscosity @ 100C level of 7.647 does not meet many or all of the specifications of the other manufacturers Defendants list on the labels and advertising of their 303 THF Product.

52.     After its testing and research of the tractor hydraulic fluids, the MDA notified the retailers, including Defendant Tractor Supply, that the Super S Super Trac 303 Tractor Hydraulic Fluid product was misbranded and violated Missouri's law prohibiting deceptive business practices (sec. 413.115, RSMo.) because it failed to meet any current tractor manufacturer's specifications.  The MDA's October 12, 2017 letter to Smitty's with regard to Super S Super Trac 303 THF stated:

> The Missouri Department of Agriculture is responsible for insuring that all consumer commodities including motor oil, antifreeze, automatic transmission fluid, or other automotive products sold or offered for sale in the state of Missouri meet the requirements of Missouri Revised Statute, Chapter 413 Weights and Measures and/or Missouri Code of State Regulation 2 CSR 90-22.140, Packaging and Labeling Requirements.

> On April 21, 2017, the Division of Weights, Measures and Consumer Protection purchased and tested a sample of Super S Super Trac 303 Tractor Hydraulic Fluid.  This product claims to meet John Deer 303 specifications. John Deere 303 was discontinued and was subsequently replaced with the current JDM-J20C or D.  Testing indicates your product does not meet Kinematic viscosity for John Deere J20C or pour point for J20D.  This

14

product is misbranded because the product did not meet the specification limits. Additionally, the reported performance additive content is lower than a typical J20C.

53.     The MDA's letter then referenced Missouri Revised Statue 413.115 and noted the sale of misbranded commodities constituted a crime of deceptive business practice. The MDA letter to Smitty's then noted: **"You are hereby ordered to remove this product from sale until changes are made to correct the labeling or the product."**

54.     The MDA also concluded that Defendants' THF product used waste, or "line flush" oil, which contains motor oil and other ingredients inappropriate for use in a tractor hydraulic fluid. In an November 20, 2017 email discussing Defendants' product, the MDA Department of Weights and Measures Director stated the following regarding Defendants' 303 THF Product:

| From: | Hayes, Ron |
|---|---|
| Sent: | Monday, November 20, 2017 11:12 AM |
| To: | Chinn, Chris - Director; Taylor, Shantell |
| Subject: | RE: stop sale-tractor fluid |

I would be happy to call him. If you want, I can have Tony sit in on the call.

The 303 tractor fluid claims that they meet a John Deere obsolete standard that does not exist.

I have talked with Tractor Supply a couple of weeks ago with their supplier on the phone call.
On the phone call, the supplier said it met another newer version of an obsolete spec which they did not claim on the label....but our tests shows it doesn't.

Their supplier uses "line flush" oil which contains motor oil and small amounts of motor oil additives. Those additives should not be used in tractor fluids.

Ron

55.     In an October 12, 2017 letter to TSC with regard to Super S Super Trac 303 THF, the MDA noted that "[t]ests indicate this is a misbranded product and does not comply with Missouri law RSMO Chapter 413." The MDA further wrote that TSC was "hereby ordered to remove this product from sale until changes are made to correct the labeling or the product itself."

56. On November 21, 2017, the MDA sent a notice letter to Buchheit which also sold some of Smitty's Super S Super Trac 303 product in Missouri. The letter informed Buchheit that Super S Super Trac 303Tractor Hydraulic Fluid was a misbranded product and did not comply with Missouri law, and ordered Buchheit to remove the product from sale until changes were made to correct the labeling.

57. In or around November of 2017, Defendant Tractor Supply provided a notice to consumers at its stores that the State of Missouri placed a stop sale order on its five (5) gallon buckets of 303 THF Products.

58. On information and belief, despite receipt of the MDA's stop sale notices, Defendants continued to attempt to sell the 303 THF Product in Missouri. In a September 11, 2018 letter (more than ten months after the obsolete THF products had been banned from being sold in Missouri), the MDA noted it had conducted a re-inspection at TSC and "found that these products remained on the shelf and for sale." TSC was then notified as follows:

> **You are hereby ordered again to cease and desist the practice of selling motor oil, antifreeze, transmission fluid, or other automotive products that do not conform to state law.**

### Plaintiffs' Experience with Defendants' Labeling, Advertising and Products

59. In the five-year period prior to the original filing of this Class Action, Plaintiffs purchased Defendants' 303 THF Product on numerous occasions, primarily for personal, family, or household purposes.

60. As with all Members of the Class, in the five-year period prior to the original filing of this Class Action, Plaintiffs purchased Defendants' 303 THF Product containing the label representations set forth above.

61.     Plaintiff Shawn Hornbeck purchased and used Super S Super Trac 303 Tractor Hydraulic Fluid. In the fall of 2014, Plaintiff Hornbeck purchased three 5-gallon buckets of Super S Super Trac 303 at Tractor Supply located in Belton, Missouri.   Plaintiff paid between $18.00 and $30.00 for each bucket.

62.     The 303 THF Product was used by Plaintiff Hornbeck for personal use on the following equipment:  John Deere Skid Steer Loader Hydraulic System, 1944 John Deere B Tractor, 1950 John Deere 50 Tractor, Hay Wagon Lift Cylinder, Log Splitter Hydraulic Tank, 1952 Chevy Grain Truck Lift Cylinder, and 1958 International Dump Lift System.

63.     Plaintiff Monte Burgess purchased and used Super S Super Trac 303 Tractor Hydraulic Fluid.  In the time period of Summer 2013 to December of 2017, Plaintiff Burgess purchased at least one 2-gallon jug and one 5-gallon bucket of Super S Super Trac 303 at Tractor Supply located in Belton, Missouri.  Plaintiff paid approximately $18.00 for each 2-gallon jug and $30.00 for each 5-gallon bucket.

64.     The THF Product was used by Plaintiff Burgess for personal use on the following equipment:  tractors, mowers, dump trucks, brush hogs, farm implements, skidders and log splitters, including early 1970s model 9000 Ford tractor and 1070 Case tractor.

65.     Plaintiff Russ Mapes purchased and used Super S Super Trac 303 Tractor Hydraulic Fluid.  In the time period of Summer 2013 to December of 2017, Plaintiff Mapes purchased 5-gallon buckets of Super S Super Trac 303 at Tractor Supply stores located in Belton, Missouri and Clinton, Missouri.  Plaintiff paid approximately $25.00 for each bucket.

66.     The THF Product was used by Plaintiff Mapes in a 1974 Minneapolis Moline tractor and a 1960s John Deere tractor.

67.    Plaintiff Dan Chevalier purchased and used Super S Super Trac 303 Tractor Hydraulic Fluid.  In the time period of Summer 2013 to December of 2017, Plaintiff Chevalier purchased 5-gallon buckets of Super S Super Trac 303 at Tractor Supply located in Belton, Missouri.  Plaintiff paid approximately $25.00 for each bucket.

68.    The THF Product was used by Plaintiff Chevalier in a 1970 John Deere 3020 tractor, a 1970s John Deere 4630 tractor, and a John Deere 4040 tractor.

69.    As a result of Defendants' manufacturing and offering the 303 THF Product for sale in Missouri, Plaintiffs purchased a tractor hydraulic fluid that was (falsely and deceptively) offered for sale as a "303" fluid that contained quality base oils and additives, met required specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, and had a value much less than the price offered for sale, and exposed equipment to increased wear and damage.

70.    Plaintiffs reasonably relied upon Defendants' representation that the fluid was a "303" fluid and Defendants' own labeling, statements and advertisements concerning the particular qualities and benefits of the Super S Super Trac 303 THF Product.

71.    All reasonable consumers would consider Defendants' 303 THF Product to be suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' 303 THF Product was of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and/or that use of Defendants' 303 THF Product would cause all equipment to suffer increased wear and damage.

72.    A reasonable consumer would consider Defendants' labeling, statements and advertisements when looking to purchase a tractor hydraulic fluid.  As a result of using Defendants'

303 THF Product, Plaintiffs and Class Members: (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Product was different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and (f) suffered damage to their equipment, including but not limited to excessive wear, leakage in the seals, exposure to spiral gear damage, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening.

73. When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and Class Members their 303 THF Product, Defendants knew or should have known that product (1) did not meet manufacturer specifications and was not acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) was not an adequate substitute for and did not satisfy John Deere's JD-303 specifications and/or designation; (3) was not adequate to provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) was not adequate to protects against rust and corrosion; and (5) was not appropriate for use in equipment of manufacturers including Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere 303, J20A, Oliver, Ford and Caterpillar.

74. Plaintiffs used the 303 THF Product in the manner in which Defendants advised it could and should be used.

75. As a result of Defendants' 303 THF Product not meeting specifications as labeled, advertised, marketed, warranted, and promised, Defendants violated the Missouri Merchandising

Practices Act, breached express and implied warranties, fraudulently or negligently induced Plaintiffs and Class Members to purchase their products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

76.     Defendants' manufacture, labeling, and sale of Super S Super Trac 303 THF was deceptive and misleading in at least the following respects:

(a) Defendants' use of John Deere's "303" designation in the name of the product is deceptive and misleading. The Super S Super Trac 303 product is not a John Deere product, does not use John Deere 303's formula and cannot meet the specifications for John Deere 303. Defendants packaged their Super S Super Trac 303 product in the yellow bucket with illustrations of modern tractors and equipment, and used and traded on the John Deere name, so as to further deceive and mislead and create the impression that the 303 THF Product was a legitimate tractor hydraulic fluid that met the specifications for John Deere 303 and other John Deere equipment.

(b) Defendants placed a deceptive and misleading statement on the product label by claiming that John Deere 303 is one of the specifications for which Super S Super Trac 303 is "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended."

(c) Defendants placed a deceptive and misleading statement on the product label by listing eleven (11) other manufacturers as those for which Super S Super Trac 303 is "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended," without

specifying the equipment/specifications purportedly met for each of those eleven (11) manufacturers or exactly where the product is "recommended."

(d) Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the label.

(e) Defendants placed a deceptive and misleading statement on the product label by listing manufacturers of equipment in which the Super S Super Trac 303 product purportedly may be used, when in reality the product does not meet many of the specifications for the listed manufacturers' modern or older model equipment.

(f) Defendants made a deceptive and misleading statement on the product label by representing that the product has been field tested.

(g) Defendants made a deceptive and misleading statement on the product label when claiming that the Super S Super Trac 303 "will provide excellent results in the areas of:

- Anti-wear properties
- Brake Chatter
- Extreme Pressure Properties
- Foam Suppression
- PTO Clutch Performance
- Rust Protection
- Water Sensitivity"

(h) Defendants engaged in misleading and deceptive conduct with regard to their Super S Super Trac 303 product in failing to disclose that the product contained flush oil, line flush, waste oil and/or contained other materials that should never be contained in tractor hydraulic fluid.

77. The conduct listed in paragraph 76(a)-(h) constitutes deceptive business practices

in violation of Missouri Revised Statute 413.115: "**Deceptive business practices, prohibited**- A person commits the crime of deceptive business practice if in the course of engaging in a business, occupation or profession, he or she reckless: (4) Sells, offers or exposes for sale misbranded commodities."

78.　　This action is brought by Plaintiffs against Defendants to recover all money paid by Plaintiffs and Class Members to Defendants for purchase of their 303 THF Product which was labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiffs and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## CLASS ACTION ALLEGATIONS

79.　　Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class of similarly situated persons:

> All persons and other entities who purchased Super S Super Trac 303 Tractor Hydraulic Fluid in Missouri, at any point in time from May 25, 2013 to present, excluding any persons and/or entities who purchased for resale.

80.　　Also excluded from the Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

81.　　The 303 THF Product at issue was sold across Missouri through retailers. The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

82.     The proposed Class is so numerous that joinder of all Class Members is impracticable.  Although the exact number and identity of each Class Member is not known at this time, there are thousands of Members of the Class.

83.     There are questions of fact and law common to the Class which predominate over questions affecting only individual Class Members.  The questions of law and fact common to each Class arising from Defendants' actions include, without limitation, the following:

    a.  Whether Defendants' 303 THF Product was being labeled, advertised and marketed as alleged in paragraphs 8-9, 25-37, 43-45, and 76-77, above;

    b.  Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

    c.  Whether Defendants' 303 THF Product in actuality was as alleged in paragraphs 12, 38-42, 45-56, 69, and 76-77, above;

    d.  The components and qualities of Defendants' 303 THF Product, and the cost to Defendants to manufacture, distribute, market and sell their 303 THF Product;

    e.  Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Product was deceptive, unfair, and/or dishonest as alleged in paragraphs 36-44 and 76-77;

    f.  Whether Defendants breached the express warranties provided with regard to the 303 THF Product;

    g.  Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Product;

    h.  Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the 303 THF Product;

    i.  Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Product and the obsolete nature of the product and the specifications the product claimed to meet;

    j.  Whether Defendants' representations regarding their 303 THF Product were false and made knowingly by Defendants, and were therefore deceptions, frauds, false pretenses, false promises, and/or misrepresentations as described in 407.020 RSMo and a violation thereof;

23

k.  Whether Defendants' representations were false and made negligently by Defendants, and were therefore deceptions, frauds, false pretenses, false promises, and/or misrepresentations as described in 407.020 RSMo and a violation thereof;

l.  Whether use of the 303 THF Product caused and/or exposed equipment to damage;

m.  Whether Defendants were unjustly enriched; and,

n.  Whether Defendants were negligent.

84.  Each representative Plaintiff's claims are typical of those in the putative Class because each purchased Defendants' 303 THF Product and was similarly treated.

85.  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of other Members of the Class. The interests of the other Class Members will be fairly and adequately protected by Plaintiffs and counsel, who have extensive experience prosecuting complex litigation and class actions.

86.  A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. It would be impracticable, cost prohibitive, and undesirable for each Member of the Class to bring a separate action. In addition, the presentation of separate actions by individual Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests. A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

87.  A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

88.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendants' acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiffs.  All Class Members who purchased Defendants' products were treated similarly.  Thus, all Class Members have the same legal right to an interest in relief for damages associated with the violations enumerated herein.

89.     Plaintiffs assert in Counts I through VIII, below, the following claims on behalf of themselves and the Class:

- Count I – Missouri Merchandising Practices Act Violations

- Count II – Breach of Express Warranty

- Count III – Breach of Implied Warranty of Merchantability

- Count IV – Fraud/Misrepresentation

- Count V – Negligent Misrepresentation

- Count VI – Unjust Enrichment

- Count VII – Negligence

- Count VIII – Breach of Implied Warranty of Fitness for Particular Purpose

**COUNT I**
**(Violations of Missouri's Merchandising Practices Act)**
**(Plaintiffs and All Class Members Who Purchased for Personal, Family, Household Use)**

90.     Plaintiffs incorporate by reference all preceding paragraphs of this First Amended Class Action Complaint as if fully set forth herein.

91.     Plaintiffs and many Class Members purchased Defendants' 303 THF Product for personal, family, or household purposes.

92.     Plaintiffs Shawn Hornbeck, Monte Burgess, Dan Chevalier, and Russ Mapes are all "person[s]" for purposes of the Missouri Merchandising Practices Act ("MMPA").  Mo. Rev. Stat. § 407.010.

93.     Defendants' 303 THF Product meets the definition of "merchandise" for purposes of the MMPA.  Mo. Rev. Stat. § 407.010.

94.     Defendants' sale of their 303 THF Product is a "sale" within the meaning of the MMPA.  Mo. Rev. Stat. § 407.010.

95.     Defendants engaged in "trade" or "commerce" within the meaning of the MMPA.  Mo. Rev. Stat. § 407.010.

96.     Under the MMPA, Defendants have a statutory duty to refrain from deceptive acts and practices.

97.     Pursuant to the MMPA, an unlawful practice is the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . .  in or from the State of Missouri."  Mo. Rev. Stat. § 407.020

98.     Defendants used and employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Product in trade or commerce in the State of Missouri, in violation of the MMPA.

99.     Defendants' conduct  set forth in paragraphs 8-9, 12, 25-38, 43-57, 69, and 76-77, above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, and that the 303 THF Product met specifications, were unfair, deceptive, false and misleading and made knowingly by Defendants or without knowledge

as to their truth or falsity and were therefore deceptions, frauds, false pretenses, false promises, and misrepresentations as described at § 407.020 RSMo, and therefore a violation of the MMPA.

100. Defendants' conduct set forth in paragraphs 8-9, 12, 25-38, 43-56, 69, and 76-77, above, including without limitation the label representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, also constituted the omission or suppression of a material fact in violation of § 407.020 RSMo in that Defendants' 303 THF Product was not appropriate for use and did not meet specifications as labeled, advertised, marketed, and sold.

101. Defendants' conduct as set forth herein with regard to the marketing and sale of the 303 THF Product constitutes unlawful, unfair and/or fraudulent business practices in violation of the MMPA

102. Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression or omission of material facts in connection with the marketing and sale of the 303 THF Product, all in violation of §407.020 RSMo.

103. Defendants' conduct with regard to their 303 THF Product was materially misleading and deceptive, and was a proximate cause of economic damage to purchasers.

104. Plaintiffs and Class Members have suffered economic and other damages as a result of Defendants' conduct with regard to the marketing and sale of the 303 THF Product.

105. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class Members have suffered ascertainable losses of money.

106. Defendants' conduct as described herein was intentional, done knowingly, in conscious disregard of the rights of Plaintiffs and other Class Members, and in violation of § 407.020 RSMo, and the regulations of the Attorney General of Missouri promulgated thereunder.

107. Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT II
### (Breach of Express Warranty – Plaintiffs and All Class Members)

108. Plaintiffs incorporate by reference all preceding paragraphs of this First Amended Class Action Complaint as if fully set forth herein.

109. Plaintiffs and Class Members purchased Defendants' 303 THF Product.

110. As set forth above, Defendants made common statements of facts regarding quality and use in the name and on the label of the 303 THF Product.

111. The common statements Defendants made in the name and on the label of the 303 THF Product were made to induce Plaintiffs and Class Members to purchase the 303 THF Product and/or were a material factor in inducing Plaintiffs and Class Members to purchase the 303 THF Product, and therefore became part of the basis of the benefit of the bargain and an express warranty.

112 As set forth above, the THF 303 Product did not conform to the statements of Defendants. As a result, Plaintiffs and the Class Members did not receive goods as warranted by Defendants.

113. Defendants have received from Plaintiffs timely notifications of the defects in their THF 303 Product.

114. The failure of the THF 303 Product to conform to the statements of Defendants has caused injury and damage to Plaintiffs and Class Members.

**COUNT III**
**(Breach of Implied Warranty of Merchantability – Plaintiffs and All Class Members)**

115.    Plaintiffs incorporate by reference all preceding paragraphs of this First Amended Class Action Complaint as if fully set forth herein.

116.    Defendants directly or indirectly sold the 303 THF Product to Plaintiffs and Class Members for use as described above.

117.    As set forth above, at the time Defendants sold the 303 THF Product, the product was not fit for its ordinary use and the use described by Defendants.

118.    Plaintiffs and Class Members used the 303 THF Product for its ordinary purpose and the use described by Defendants.

119.    Defendants have received from Plaintiffs timely notification of the defect in their 303 THF Product.

120.    The failure of the 303 THF Product to be fit for their ordinary purpose has cause injury and damage to Plaintiffs and Class Members.

**COUNT IV**
**(Fraudulent Misrepresentation – Plaintiffs and All Class Members)**

121.    Plaintiffs incorporate by reference all preceding paragraphs of this First Amended Class Action Complaint as if fully set forth herein.

122.    Defendants made representations regarding their 303 THF Product, as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met specifications, and that the 303 THF Product provided certain qualities, results and benefits.

123.    Defendants' representations set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment,

that the 303 THF Product met specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendants, and were therefore fraudulent.

124. Defendants' representations as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, and that the 303 THF Product met specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant with the intent that Plaintiffs and other Class Members rely on such representations.

125. Defendants' representations as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

126. Defendants' representations were material to the purchase of the 303 THF Product.

127. Plaintiffs and Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

128. Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of the 303 THF Product constitutes fraud on Plaintiffs and all Class Members.

129. Plaintiffs and Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of the 303 THF Product.

130. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class Members have suffered ascertainable losses of money and other damages.

131. Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiffs and other Class Members.

132. Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT V
### (Negligent Misrepresentation – Plaintiffs and All Class Members)

133. Plaintiffs incorporate by reference all preceding paragraphs of this First Amended Class Action Complaint as if fully set forth herein.

134. Defendants made representations regarding their 303 THF Product, as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met specifications, that the 303 THF Product provided certain qualities, results and benefits.

135. Such representations were made by Defendants with the intent that Plaintiffs and the Class Members rely on such representations in purchasing Defendants' 303 THF Product.

136. Such representations were material to Plaintiffs' and the Class Members' purchase of Defendants' 303 THF Product.

137. Such representations were false.

138. Defendants failed to use ordinary care and were negligent in making and/or allowing to be made the representations set forth above.

139.    Plaintiffs and the Class Members relied on such representations and such reliance was reasonable under the circumstances.

140.    Plaintiffs and Class Members have been economically damaged by Defendants' negligent conduct with regard to the marketing and sale of the 303 THF Product.

141.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered ascertainable losses of money.

## COUNT VI
**(Unjust Enrichment – Plaintiffs and All Class Members)**

142.    Plaintiffs incorporate by reference all preceding paragraphs of this First Amended Class Action Complaint as if fully set forth herein.

143.    As a result of Defendants' deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the 303 THF Product, Plaintiffs and the Class Members purchased Defendants' 303 THF Product and conferred a benefit upon Defendants by purchasing obsolete and harmful tractor hydraulic fluid, which benefit Defendants appreciated and accepted.

144.    Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Product.

145.    Defendants were enriched at the expense of Plaintiffs and other Class Members through the payment of the purchase price for Defendants' 303 THF Product.

146.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

147.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the other Class

Members, in light of the fact that the 303 THF Product purchased by Plaintiffs and the other Members of the Class were not what Defendants represented them to be. Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiffs and the other Members of the Class for the monies paid to Defendants for the 303 THF Product.

148. By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiffs and Class Members.

<u>COUNT VII</u>
**(Negligence – Plaintiffs and All Class Members)**

149. Plaintiffs incorporate by reference all preceding paragraphs of this First Amended Class Action Complaint as if fully set forth herein.

150. Defendants' owed a duty of at least reasonable care to the purchasers of their 303 THF Product, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished THF Product.

151. Defendants breached this duty by the acts and omissions alleged herein, including but not limited to:

    a.    Distribution and use of misleading labeling information regarding the 303 THF Product qualities and OEM specifications met by product;

    b.    Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Product and potential harm to equipment caused by use of the 303 THF Product in equipment for which it does not meet specifications;

c.　Failing to adequately ensure the 303 THF Product manufactured and sold met the advertised specifications;

d.　Failure to utilize adequate testing and other controls to ensure the 303 THF Product met the advertised specifications;

e.　Failing to have appropriate viscosity specifications; and,

f.　Instituting and/or allowing careless and ineffective product manufacturing protocols.

152.　As a result of Defendants' negligence, Defendants' 303 THF Product had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.

153.　Defendants' negligence caused or contributed to cause injuries and damages to Plaintiffs and the Class Members, caused Plaintiffs' and the Class Members' equipment to suffer harm and damage, including wear, damage and leakage in the seals, and exposure to damage in the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendants' negligence also caused or contributed to cause Plaintiffs and the Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

154.　Plaintiffs and Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

155.　Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiffs and Class Members, such that punitive damages are thus warranted.

## COUNT VIII
### (Breach of Implied Warranty of Fitness for Particular Purpose)
### (Plaintiffs and All Class Members)

156.    Plaintiffs incorporate by reference all preceding paragraphs of this First Amended Class Action Complaint as if fully set forth herein.

157.    Defendants directly or indirectly sold the 303 THF Product to Plaintiffs and Class Members for use as described above.

158.    As set forth above, at the time Defendants sold the 303 THF Product, the product was not fit for its particular purpose of use as universal hydraulic fluid for tractors and/or other equipment.

159.    Defendants knew or should have known of the use for which the 303 THF Product was purchased.

160.    Plaintiffs and Class Members reasonably relied upon Defendants' judgment that the 303 THF Product was fit for use as universal hydraulic fluid for tractors and/or other equipment.

161.    When the THF Product was sold by Defendants, it was not fit for such use as universal hydraulic fluid for tractors and/or other equipment.

162.    Defendants have received from Plaintiffs timely notification of the defect in their 303 THF Product.

163.    The failure of the 303 THF Product to be fit for its particular purpose has caused injury and damage to Plaintiffs and Class Members.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described in this First Amended Class Action Complaint, respectfully requests that:

A. The Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and § 407.025 RSMo, and adjudge Plaintiffs and counsel to be adequate representative thereof;

B. The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiffs and the other Members of the Class;

C. The Court enter an Order awarding Plaintiffs, individually and on behalf of the other Members of the Class, their expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

D. The Court enter an Order awarding to Plaintiffs, individually and on behalf of other Members of the Class, pre-and post-judgment interest, to the extent allowable; and,

E.  For such other and further relief as may be just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a jury trial on all issues of fact and damages in this action.

Date: December 18, 2018       Respectfully submitted,#

WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C

BY:_____/s/ *Gene P. Graham, Jr.*_____
      Gene P. Graham, Jr.   MO 34950
      Bryan T. White        MO 58805
      19049 East Valley View Parkway
      Independence, Missouri 64055
      (816) 373-9080 Fax: (816) 373-9319
      ggraham@wagblaw.com
      bwhite@wagblaw.com

      -and-

HORN AYLWARD & BANDY, LLC

BY:    */s/ Thomas V. Bender*
    Thomas V. Bender, MO Bar #28099
    Dirk Hubbard, MO Bar #37936
    2600 Grand, Ste. 1100
    Kansas City, MO 64108
    (816) 421-0700
    (816) 421-0899 (Fax)
    dhubbard@hab-law.com

    -and-

CLAYTON JONES, ATTORNEY AT LAW


BY:    /s/ Clayton A. Jones
    Clayton Jones   MO51802
    P.O. Box 257
    405 W. 58 Hwy.
    Raymore, MO 64083
    Office: (816) 318-4266
    Fax: (816) 318-4267
    claytonjoneslaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**